**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 05-1363**

───────────

JOSEPH LEE GIBSON,

Plaintiff - Appellant,

and

P. DAVID RICHARDSON,

Plaintiff,

versus

BOY SCOUTS OF AMERICA; JOHN DOES, No. 1-7;
NATIONAL CAPITAL AREA COUNCIL, BOY SCOUTS OF
AMERICA; RICHARD ROES, No. 1-7,

Defendants - Appellees.

───────────

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Gerald Bruce Lee, District
Judge. (CA-04-1040-1)

───────────

Argued: November 30, 2005          Decided: January 12, 2006

───────────

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ARGUED:** Raymond Donald Battocchi, GABELER, BATTOCCHI, GRIGGS &
POWELL, P.L.L.C., McLean, Virginia, for Appellant. John David
McGavin, TRICHILO, BANCROFT, MCGAVIN, HORVATH & JUDKINS, Fairfax,
Virginia, for Appellees. **ON BRIEF:** Melissa H. Katz, TRICHILO,

BANCROFT, MCGAVIN, HORVATH & JUDKINS, Fairfax, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Joseph L. Gibson brought this diversity tort action against the Boy Scouts of America ("BSA" or "Boy Scouts") and its local council, the National Capital Area Council, Boy Scouts of America ("NCAC"), seeking declaratory, injunctive, and compensatory relief, as well as punitive damages and attorneys fees, for alleged violations of the right to fair procedure, ultra vires actions, and defamation. The district court granted summary judgment to Gibson on his fair procedure claim and awarded him injunctive relief, but dismissed or granted summary judgment to BSA and NCAC on all other claims. Only Gibson appeals. We affirm.

I.

Joseph Gibson's relationship with the Scouts spanned over fifty years, beginning when he himself served as a Boy Scout from 1951 to 1962. During his time as a youth Scout, Gibson received many organizational honors, including earning the rank of Eagle Scout and being elected to BSA's highest honor society, Order of the Arrow. When his son joined the Scouts in 1996, Gibson became an adult member of BSA, and in 1998, he became the volunteer Scoutmaster of his son's Troop, Troop 869, located in McLean, Virginia. In July 2001, however, BSA expelled Gibson after he

flip-kicked[1] a youth at the National Boy Scouts Jamboree.  Gibson appealed the decision to the Northeast Region and it reinstated him as a member in December 2001.  He subsequently continued to serve as Scoutmaster of Troop 869.

Beginning in the summer and fall of 2002, parents of Scouts in Troop 869 started to raise complaints about Gibson's leadership. In response, District Executive, Brian Fasci, set up a series of meetings with the concerned parents, as well as with the members of the local committee, including Gibson.  Despite these meetings, in January 2003, Fasci received an additional complaint from a parent expressing concern with Gibson's "lack of kindness and humanity." At that point, Fasci brought the problem to the attention of the Standards for Membership Committee.  He also met with two members of the local committee and two members of the community to address these parental concerns, and expressed his view that Gibson was "unfit to serve as a Scoutmaster or be in Scouts."

Aside from the discussions at the meetings he attended, there is no evidence that Gibson was aware that his membership was under review until February 7, 2003, when he received a letter informing him that his registration in the Boy Scouts had been revoked. Gibson asked the BSA the basis for his revocation and received a response on March 10, 2003.  Gibson appealed the revocation to the

---

[1]As described by the district court, Gibson "flip-kicked" by "swinging his lower leg from the knee to the side to contact the youngster on the buttocks with the top of his moccasin."

Northeast Region, and then to the national headquarters of the BSA. During the revocation and appeal, BSA did not afford Gibson a hearing to defend himself against the charges. On December 17, 2003, BSA denied Gibson's appeal.

A month later, Gibson's counsel contacted BSA to inquire as to the reasons for its revocation decision. He spoke with David Park, counsel to BSA, and "told him that [Gibson's counsel] was essentially at a loss to understand the action that the BSA had taken" against Gibson. Park responded by explaining "that, often, individuals whose BSA registrations are revoke [sic] 'aren't candid' with their counsel."

The following month, in February 2004, Gibson filed a diversity tort action against BSA and NCAC in federal court in the District of Columbia alleging violations of the common law right to fair procedure, ultra vires conduct, and defamation. After the defendants moved for a change of venue, the case was transferred to the Eastern District of Virginia. Applying Virginia law,[2] in four

---

[2]Gibson argues that the substantive law of the District of Columbia, rather than Virginia, applies here. Because the suit was initially filed in the District of Columbia, the choice of law rules of the District of Columbia govern. Ferens v. John Deere, Co., 494 U.S. 516, 523 (1990). These rules provide that the substantive law of the forum with the greatest "governmental interest" controls. See, e.g., Kaiser-Georgetown Comm. Health Plan, Inc. v. Stutsman, 491 A.2d 502, 509 (D.C. 1985). In determining this, a court must examine "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is

separate opinions, the district court granted summary judgment to Gibson on his fair procedure claim, and summary judgment to BSA and NCAC on the ultra vires claims, and the claims for reinstatement, compensatory and punitive damages, and attorney's fees, and dismissed Gibson's defamation claims.

II.

First, Gibson maintains that he is entitled to compensatory and punitive damages, as well as attorneys fees, for his success on his "wrongful expulsion" claim.

As an initial matter, we note that this contention mischaracterizes the sole claim on which Gibson prevailed. Gibson only succeeded on his state law fair procedure claim. The district court ultimately granted summary judgment to BSA and NCAC on the ultra vires claim, finding that "no genuine dispute of material fact exists that Defendant's revocation of Plaintiff's membership in the scouting movement conformed with their bylaws." Gibson did not appeal the ultra vires ruling. Thus, the only claim for which

---

centered." Restatement (Second) of Conflicts of Laws § 145(2) (1971). It is undisputed that Gibson is a resident of Virginia, the alleged injuries occurred in Virginia, and the relationship between the parties was centered in Virginia where Troop 869 was located. Although BSA and NCAC are incorporated in the District and Gibson is employed there, these factors are not sufficient to overcome the strong interest that Virginia has in this case. Therefore, we agree with the district court that the substantive law of Virginia applies to Gibson's claims.

he can allege a right to damages and attorneys fees is his fair procedure claim.

Under Virginia law, Gibson can recover compensatory damages for injuries "proximately caused by another party's tortious conduct." 7-Eleven, Inc. v. Dept. of Envtl. Quality, 590 S.E.2d 84, 92 (Va. App. 2003). Gibson's claimed damages include un-reimbursed expenses from his BSA activities, a donation he made for a BSA award, the cost of the time he spent pursuing his fair procedure claim, and damages for emotional and reputational harms allegedly suffered.[3] Clearly, no tortious conduct of BSA proximately caused the un-reimbursed expenses or the award donation, and we find it improper to award compensatory damages for the time Gibson spent pursuing this claim. See cf. 6 Am. Jur. 2d Associations and Clubs § 42 (2005). As for Gibson's alleged emotional and reputational harms, these were caused not by the violation of Gibson's fair procedure rights -- his lack of notice and a hearing -- but by the fact of his ultimate expulsion.

---

[3]Specifically, Gibson claims the following: $37,900 for time he spent on his "wrongful expulsion" claim; $158.61 for expenses associated with this claim; $502.25 for mileage; $400 for un-reimbursed Order of the Arrow expenses; $124.63 for other unspecified un-reimbursed expenses; $1,000 for the James E. West Award; $163.01 for court costs; $150 for the filing fee; $13.01 for the cost of service; and an unspecified amount in attorney's fees. J.A. 376. He also claims damages for "denied participation in Scouting activities and association with Scouts," for "[e]mbarrassment, humiliation, damage to reputation and esteem in the communities of McLean, Trinity United Methodist Church, and McLean, Virginia," and "[d]amage to professional reputation and diminution in mobility."

Indeed, in discussing the matter, Gibson explains that his "expulsion from BSA membership is . . . a blot of [sic] my record and reputation that hinders my mobility as an attorney."  No where does he contend that the procedural harm he suffered damaged his reputation or professional mobility or led to any emotional distress.  In sum, then, Gibson proffers no evidence that violation of his fair procedure rights resulted in the alleged compensatory damages.

We also reject Gibson's claim that at the very least, he is entitled to nominal damages for his "deprivation of a fundamental right."  Brief of Appellant at 23.  Again, this characterization misses the mark.  Gibson's fair procedure claim was a common law tort claim -- he did not allege any constitutional or civil rights deprivation.  His argument therefore lacks merit.  Nominal damages may be required when "plaintiff's civil rights are found to have been violated" on the theory that such an award allows courts to "provide some marginal vindication for a constitutional violation." Park, 250 F.3d at 854 (emphasis added).  Nominal damages may be appropriate in some common law tort cases in which vindication of a legal right is not otherwise available, Town & Country Properties, Inc. v. Riggins, 457 S.E.2d 356, 365 (1995).  Virginia courts, however, have awarded injunctive relief rather than nominal damages to vindicate violations of the common law right to fair procedure.  See, e.g., Gottlieb v. Economy Stores, Inc., 102 S.E.2d

345, 352 (Va. 1958) (approving the injunctive remedy provided for the fair procedure violation); see also Berrien v. Pollitzer, 165 F.2d 21, 23 (D.C. Cir. 1947) (allowing only relief in equity for fair procedure violation).

Moreover, because Gibson is entitled to neither compensatory nor nominal damages for his fair procedure claim, he cannot recover punitive damages. See Valley Acceptance Corp. v. Glasby, 337 S.E.2d 291, 297 (Va. 1985) (stating that under Virginia law, punitive damages are not proper absent an award of compensatory or nominal damages).

Nor is Gibson entitled to attorney's fees. Although there are recognized exceptions to the traditional American rule requiring each party to pay its own fees, see Hall v. Cole, 412 U.S. 1, 4 (1973),[4] an award of fees under these exceptions is within the court's discretion. Fees are not mandatory, but rather are permitted "when the interests of justice so require." Id. at 5. Accord, Prospect Dev't Co. v. Bershader, 515 S.E.2d 291, 300-01 (Va. 1999). Given Gibson's very limited success, we cannot hold that the district court abused its discretion in abiding by the

---

[4]The specific exception that Gibson relies on allows attorney's fees where "the plaintiff's successful litigation confers 'a substantial benefit o the members of an ascertainable class, and where the court's jurisdiction over the suit makes possible an award that will operate to spread the costs proportionately among them." Hall, 412 U.S. at 5-7. He claims that because he "succeeded in winning a significant benefit for all members of the BSA, youth and adults," attorney's fees are warranted. Brief of Appellant at 29.

traditional American rule and refusing to award Gibson attorney's fees.

                              III.

Gibson also argues that the injunctive remedy ordered by the district court -- a retroactive hearing -- does not adequately redress his injuries. He maintains that he should instead be reinstated as a member of BSA. We review the district court's award of injunctive relief for abuse of discretion. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 939 (4th Cir. 1995).

In crafting its injunctive remedy, the district court considered what relief would appropriately vindicate Gibson's denial of fair procedure while keeping in mind the court's limited authority to review internal decisions of social organizations. Relying on Gottlieb v. Economy Stores, Inc., 102 S.E.2d 345, 352 (Va. 1958), it noted that under Virginia law, courts reviewing an expulsion from a corporation are limited to examining whether the organization violated the plaintiff's right to fair procedure, and that "where there is evidence tending to support the conclusion [of the organization], the courts will not interfere with the merits of the decision." The district court determined that, "in light of [BSA's] continued desire to revoke Mr. Gibson's membership," it could not order reinstatement because this would require the court

to "substitute itself for the membership of the Boy Scouts to determine whether Mr. Gibson is fit for membership." Given BSA's decision to revoke Gibson's membership on the basis of "their membership standards and information not before the Court," and "[g]iven the nature of the Boy Scouts membership involving parents, children, and church members," the court refused to reinstate Gibson. Instead, the court fashioned a remedy that required BSA to provide Gibson with notice and the opportunity to be heard at a hearing -- the very procedure Gibson claimed he was unjustly denied. This careful consideration by the district court does not constitute an abuse of discretion.

IV.

Gibson's final arguments concern two allegedly defamatory statements made about him by BSA officials, one in which Brian Fasci stated that Gibson was "unfit to serve as a Scoutmaster or be in Scouts," and one in which BSA's counsel, David Park, stated that Gibson was not "candid with [his own] counsel" about the incidents leading to the revocation of his membership. Gibson contends that the district court erred in dismissing these claims. Because neither statement is defamatory, we affirm the district court's dismissal.

The Supreme Court has explained that although there is no "wholesale defamation exception" for opinions, "a statement of

opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." Milkovich v. Lorrain Journal Co., 497 U.S. 1, 18-20 (1990). Also fully protected are "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." Id. at 20 (quoting Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988)). See also Yeagle v. Collegiate Times, 497 S.E.2d 136, 138 (Va. 1998) (explaining that "to be actionable, the alleged defamatory statements must still be understood to convey a false representation of fact"); Williams v. Garraghty, 455 S.E.2d 209, 215 (Va. 1995) ("pure expressions of opinion" are fully protected while "[f]actual statements made to support or justify an opinion" may be actionable as defamation).

In dismissing Gibson's first defamation claim, the district court found the statement that Gibson's was "unfit" to be a Scoutmaster to be one of "pure opinion," constituting "merely the expression of the speaker's opinion," and thus unable to support a claim for defamation. We agree. Had Brian Fasci included the facts giving rise to his statement that Gibson was "unfit," the statement might be provable as true or false and thus might supply the basis for a defamation claim. See Williams, 455 S.E.2d at 215. However, absent discernable criteria against which to measure "fitness," the mere generalized statement that someone is unfit for a position in a volunteer association, standing alone, does not

-12-

imply the existence of facts necessary to support a defamation claim. See Swengler, 993 F.2d at 1071. Rather it simply expresses the subjective opinion of the speaker.[5]

Similarly, Gibson's second defamation claim -- his contention that BSA's counsel defamed him by suggesting that Gibson was not being candid with his own counsel concerning the reasons for his membership revocation –- also involves nothing more than subjective opinion. Although defamation may be established by inference in some cases, see Carwile, 82 S.E.2d at 592, the statement here is one of opinion based on the BSA attorney's experiences and expresses speculation rather than fact. See Chaves v. Johnson, 335 S.E.2d 97, 101-02 (Va. 1985) (stating that "[p]ure expressions of opinion, not amounting to 'fighting words,' cannot form the basis of an action for defamation"). Accord Fuste v. Riverside Healthcare Ass'n, Inc., 575 S.E.2d 858, 861 (Va. 2003). Even if provable as true or false, the truth or veracity of this statement says nothing about Gibson's own forthrightness. In fact, Parks had no basis of knowledge as to what Gibson told his attorney, nor was he "privy" to the reasons supporting BSA's ultimate decision.

---

[5]Gibson's suggestion that "fitness" can be "proved true or false by referring to BSA's published policies on safety and other matters" is unpersuasive. Brief of Appellant at 35. These BSA policies do not constitute job specifications defining what is necessary to be a Scoutmaster. Rather, their very generality demonstrates the lack of measurable standards in this case.

Thus, this statement was one of speculation and opinion, and does not support a claim for defamation.[6]

The district court did not err in dismissing the defamation claims.

V.

For the foregoing reasons, the opinion of the district court is

AFFIRMED.

_____

[6]In dismissing this claim, the district court held that the communication was "absolutely privileged" because it occurred between two lawyers and concerned "the conduct of a client of one of the lawyers." Given that no litigation was yet pending between Gibson and BSA at the time the statement was made, we cannot agree that the statement at issue is entitled to an absolute privilege. See Lindeman v. Lesnick, 604 S.E.2d 55, 58 (Va. 2004)