PRESENT: All the Justices

MICHAEL N. HANDBERG

                                         OPINION BY
v. Record No. 170964               ELIZABETH A. McCLANAHAN
                                         August 22, 2019
FELICIA GOLDBERG, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Michael N. Handberg appeals a decision of the trial court upholding a jury verdict finding him liable for defamation of Dr. Felicia Goldberg. We agree with Handberg that the trial court erred in its gatekeeping function by failing to properly instruct the jury as to actionable statements of fact versus statements that were merely opinion and thus nonactionable. We reverse and remand.

## I. BACKGROUND

Handberg retained Dr. Goldberg to provide educational advocacy services for his son who attended Loudoun County Public Schools ("LCPS"). The Morgan Center, an organization established by Dr. Goldberg, supplemented Dr. Goldberg's services with testing services. Handberg provided his debit card information to the Morgan Center for billing. Upon each request for payment, Handberg would grant permission for The Morgan Center to charge his debit card for services provided. Billing disagreements subsequently arose, however, between Handberg, Dr. Goldberg, and the Morgan Center. This resulted in Handberg sending an email on June 2, 2015 to Dr. Goldberg and educational professionals at his son's school informing them that Dr. Goldberg no longer represented his son, stating he was terminating Dr. Goldberg for fraudulent billing, and criticizing the billing practices of Dr. Goldberg and the Morgan Center as unethical.

Dr. Goldberg filed a defamation action based on Handberg's email. Of the thirty-four statements contained in the email, Dr. Goldberg quoted the following eleven statements in her first amended complaint as allegedly defamatory:

1. "That he terminated Plaintiff's services for 'fraudulent billing;'"

2. "That 'since [Plaintiff] was able to secure reimbursement for LCPS [Plaintiff] thought she had a blank check to just start dumping hours on my credit card for services not provided;'"

3. "That Plaintiff would not speak with him 'unless [he] paid her more money;'"

4. "That Plaintiff 'stated it was not my money as LCPS would pay for it, so [Plaintiff] did not understand why I cared;'"

5. "That 'the motivation of the Morgan Center was focused on maximizing their billing and not on the best interests of the children they are advocating;'"

6. "That Plaintiff's 'view was that since it was not my money (LCPS) that was paying for their services, I should just go along with excess billing. That is a value system that I don't endorse, or approve;'"

7. "That Defendant 'did not want LCPS to reimburse someone through me for services that were not authorized or performed;'"

8. "That Defendant 'did not think that [he] could trust the motives of a person that was so opportunistic and aggressive about pursuing money and was not a person that I could trust in advocating services for my son;'"

9. "That 'given the change in behavior [he] saw on this case, [he] would not recommend that LCPS agree to reimburse advocacy services in the future, given the advocate's role in the negotiation and their conflict of interest;'"

10. "That 'in the case of the Morgan Center and Dr. Goldberg, they could not resist the temptation to cash in on what they perceive as a windfall;'" and

11. "That 'I don't think this is in the students [sic] interest or LCPS interest.'"

Handberg demurred to the first amended complaint, arguing that the statements could not sustain a defamation claim. The trial court denied Handberg's demurrer in part and sustained it in part. The court found that the first eight statements recited above—numbered 1 through 8

2

(hereinafter the "first eight statements")—were actionable statements of fact, but that the last three statements—numbered 9 through 11 (hereinafter the "last three statements")—were statements of opinion incapable of supporting a defamation claim.

Handberg also filed a counterclaim, alleging conversion against the Morgan Center, fraud against Dr. Goldberg and The Morgan Center, and alleging the Morgan Center violated the Virginia Consumer Protection Act ("VCPA").

The parties proceeded to a jury trial. During her testimony, Dr. Goldberg introduced Handberg's email into evidence in support of her defamation claim, asserting that the email wrongly accused her of "a felony and of unethical and unprofessional conduct." Dr. Goldberg testified to the work she did for Handberg's son and how Handberg was informed prior to each of the charges incurred. Dr. Goldberg further testified that she did not encourage Handberg to participate in excess billing with the expectation of a reimbursement from LCPS. Dr. Goldberg also introduced an email in which she terminated Handberg as a client for failure to pay his outstanding bills.

At the close of evidence, Handberg objected to proposed jury instructions 7 and 8. Handberg contended that these instructions erroneously referred generally to the "statements in the June 2, 2015 email," rather than specifically identifying the first eight statements in Handberg's email that the trial court found to be actionable on demurrer. Accordingly, Handberg asked the court to limit the jury instructions to the statements the jury could consider as a basis for a finding of defamation. Handberg nevertheless agreed that it was appropriate for the entire email (i.e., in unredacted form) to be provided to the jury for "context." The court denied Handberg's objection, stating that "the collective memory of the jury controls" and "no other instructions are necessary." Thus, the court did not instruct the jury according to the prior

3

demurrer order, but rather generally instructed the jury to determine whether "the statements in the June 2, 2015 email were false."

The jury returned a verdict for Dr. Goldberg on her defamation claim, awarding $90,000 in compensatory damages. The jury found for Handberg on his conversion claim against the Morgan Center, finding The Morgan Center charged Handberg's debit card $35 without his authorization. The jury awarded Handberg $35 in compensatory damages and $45,000 in punitive damages. The jury also found that the Morgan Center and Dr. Goldberg were not liable for fraud and found that the Morgan Center did not violate the VCPA. The trial court denied all post-trial motions and entered a final order consistent with the jury verdicts. We granted Handberg this appeal challenging Dr. Goldberg's award of compensatory damages for defamation.

## II. ANALYSIS

### A. Demurrer as to First Eight Statements

Handberg argues generally that the trial court erred, as a threshold matter, in ruling on his demurrer that the first eight statements in his email were actionable statements of fact rather than mere statements of opinion—which cannot be the basis for a defamation claim. The court then compounded its error, Handberg asserts, by allowing the jury to consider these first eight statements in deciding Dr. Goldberg's defamation claim against him (as well as erroneously allowing the jury to consider the last three statements that the trial court had concluded were statements of opinion when ruling on the demurrer, as addressed in Part II.B., *infra*). We reject this argument, concluding that the first eight statements were actionable statements of fact as a matter of law.

"Generally, under our common law, a private individual asserting a claim of defamation *first* must show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46 (2009) (emphasis added). Relative to this requirement, a trial court, in performing its "gatekeeping function" in a defamation case, "must decide as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact." *Schaecher v. Bouffault*, 290 Va. 83, 94 (2015) (citing *Perk v. Vector Res. Group, Ltd.*, 253 Va. 310, 316-17 (1997)); *see Webb v. Virginian-Pilot Media Cos.*, 287 Va. 84, 90 (2014) ("Ensuring that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages, is an essential gatekeeping function of the court.").

First, for a statement to be actionable as defamation, "it must 'have a provably false factual connotation and thus [be] capable of being proven true or false.'" *Schaecher*, 290 Va. at 98 (quoting *Cashion v. Smith,* 286 Va. 327, 336 (2013)). In other words, "[t]he verifiability of the statement in question [is] a minimum threshold issue. If the defendant's words cannot be described as either true or false, they are not actionable." *Id*. (quoting *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.,* 829 F.2d 1280, 1288 (4th Cir.1987)). From a constitutional perspective, there is simply "no constitutional value in false statements of fact." *Tharpe v. Saunders*, 285 Va. 476, 481 (2013) (quoting *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 340 (1974)).

"'[P]ure expressions of opinion,'" however, "are constitutionally protected and 'cannot form the basis of a defamation action.'" *Id*. (quoting *Williams v. Garraghty*, 249 Va. 224, 233 (1995)); *see Schaecher*, 290 Va. at 102-03; *Hyland*, 277 Va. at 47; *Raytheon Tech. Servs. Co. v.*

5

*Hyland*, 273 Va. 292, 303 (2007); *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1998); *Chaves v. Johnson*, 230 Va. 112, 119 (1985).[1] Such speech consists of "[s]tatements that are relative in nature and depend largely upon the speaker's viewpoint." *Raytheon Tech. Servs. Co.*, 273 Va. at 303 (quoting *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132 (2003)).

Accordingly, "[w]hether an alleged defamatory statement is one of fact or opinion is a question of law to be resolved by the trial court." *Tharpe*, 285 Va. at 481-82 (quoting *WJLA-TV v. Levin*, 264 Va. 140, 156 (2002)); *see Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 714 (2006); *Fuste,* 265 Va. at 132–33. This determination is often decided on demurrer, based on the alleged defamatory statements set forth in the complaint, as occurred in the present case. *See, e.g.*, *Pendleton v. Newsome*, 290 Va. 162, 173 (2015); *Schaecher*, 290 Va. at 89-91; *Webb*, 287 Va. at 89-90.[2]

Additionally, for a statement to be actionable as defamation, it must have "the requisite defamatory 'sting' to one's reputation," which is the second prong of the threshold to be established as a matter of law. *Schaecher*, 290 Va. at 92. "Characterizing the level of harm to one's reputation required for defamatory 'sting,' we have stated that defamatory language 'tends

---

[1] As we explained in *Schaecher*:

> Causes of action for defamation have their basis in state common law but are subject to principles of freedom of speech arising under the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia. The United States Supreme Court has identified constitutional limits on the type of speech that may be the subject of common law defamation actions. Thus, speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.

290 Va. at 102 (quoting *Yeagle*, 255 Va. at 295).

[2] *See also, e.g.*, *Cashion*, 286 Va. at 332; *Tharpe*, 285 Va. at 478-80; *Mulford v. Walnut Hill Farm Group, LLC*, 282 Va. 98, 104 (2011); *Tronfeld*, 272 Va. at 711-12; *Fuste,* 265 Va. at 131; *Yeagle*, 255 Va. at 295.

to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* (quoting *Moss v. Harwood,* 102 Va. 386, 392 (1904)); *see Adams v. Lawson,* 58 Va. (17 Gratt.) 250, 255–56 (1867); *Moseley v. Moss,* 47 Va. (6 Gratt.) 534, 538 (1850).

Because these determinations are issues of law, we conduct a de novo review of the statement in question to independently determine (a) not "whether the alleged defamatory statement is true or false, but whether it is capable of being proved true or false," *Tharpe*, 285 Va. at 482 (quoting *Raytheon Tech. Servs. Co.,* 273 Va. at 304); and (b) whether it has "the requisite defamatory 'sting' to one's reputation," *Schaecher*, 290 Va. at 92.

### 1. First, Third and Fourth Statements

We initially address the first, third and fourth statements of the first eight statements at issue in Handberg's email. Apart from his bare assertion that all of the first eight statements are mere opinion, Handberg implicitly recognizes on brief that the first, third and fourth statements are actionable statements of fact in terms of their provability as true or false. In these three statements, Handberg respectively asserted in the email that Dr. Goldberg had engaged in "fraudulent billing," that she refused to speak to him unless he "paid her more money," and that she stated "it was not his money" because LCPS was "pay[ing] for [the services], so she did not understand why [he] cared." Appellant's Br. at 23-25. Rather than argue that these three statements are mere opinion, Handberg argues that the evidence at trial established that these statements were true. This argument however, puts the proverbial cart before the horse relative to our threshold determination of whether, as a matter of law, each of the first eight statements are reasonably capable of defamatory meaning, i.e., whether each statement "contain[s] a

7

provably false factual connotation" or is one "which cannot reasonably be interpreted as stating actual facts about a person."[3] *Schaecher*, 290 Va. at 102 (quoting *Yeagle*, 255 Va. at 295); *Tronfeld*, 272 Va. at 714 (same); *Fuste,* 265 Va. at 132 (same).

Only as to the third statement does Handberg baldly assert that it "lacks defamatory sting." Appellant's Br. at 25. We disagree. Read in the context of the entire email, the third statement indicated that Dr. Goldberg was knowingly billing the LCPS for services not rendered while seeking to allay Handberg's objections to such fraud because it "was not his money" paying for those services. As such, this statement provides sufficient defamatory "sting" to make it actionable.

We thus conclude that the trial court did not err in its ruling on Handberg's demurrer to Dr. Goldberg's amended complaint that the first, third and fourth statements were actionable statements of fact. Therefore, we also conclude that the court did not err in allowing the jury to consider these actionable statements in deciding Dr. Goldberg's defamation claim.

### 2. Remainder of First Eight Statements

As to the other five of the first eight statements, we also disagree with Handberg that these statements are mere opinion. "While pure expressions of opinion are not actionable, 'factual statements made to support or justify an opinion . . . can form the basis of an action for defamation.'" *Raytheon Tech. Servs. Co*., 273 Va. at 303 (quoting *Williams*, 249 Va. at 233). When "determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement." *Hyland*, 277 Va. at 47 (citing *Raytheon Tech. Servs. Co*., 273 Va. at 303; *Government Micro Res., Inc. v. Jackson*, 271

---

[3] We address Handberg's argument concerning the sufficiency of evidence, as contained in his last assignment error, in Section II.C., *infra*.

Va. 29, 40 (2006); *American Communications Network, Inc. v. Williams*, 264 Va. 336, 340 (2002)).  In addition, "a plaintiff may bring an action for defamation for 'any implications, inferences, or insinuations that *reasonably could be drawn* from each statement' of fact."  *Webb*, 287 Va. at 89 (quoting *Hyland*, 277 Va. at 48) (emphasis in original).  Furthermore, "[b]ecause expressions of 'opinion' may often imply an assertion of objective fact, the United States Supreme Court has refused to create a wholesale defamation exception for anything that might be labeled 'opinion.'"  *Tharpe*, 285 Va. at 481 n.3 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990) (some internal quotation marks omitted)).

Guided by these principles, we hold that the second, fifth, sixth, seventh and eighth statements were also actionable statements of fact.  In the second statement, Handberg asserted that Dr. Goldberg was intentionally receiving payment from LCPS for "services not provided" for Handberg's son.  This assertion was patently provable as true or false.  The fact that Handberg added in the email that Dr. Goldberg "*thought* she had a blank check" to do so "by dumping hours on [his] credit card" does not negate its factual connotation.  (Emphasis added.) The fifth statement—that the Morgan Center's priority was "maximizing [its] billing" rather than "the best interests of the children" being served—at least implied an assertion of provable fact in the context of the other statements.  When the email is read as a whole, the fifth statement is consistent with Handberg's assertions that both Dr. Goldberg and the Morgan Center, under her direction, were intentionally receiving payment for services that were not rendered.  We reach the same conclusion with regard to the sixth, seventh and eighth statements, which respectively indicated that Dr. Goldberg was engaged in "excessive billing," that she was seeking reimbursement from LCPS for "services that were not authorized or performed," and that she

9

could not be trusted given that she was "so opportunistic and aggressive about pursuing money."[4]

We thus conclude that the trial court did not err in denying Handberg's demurrer to Dr. Goldberg's amended complaint as to the second, fifth, sixth, seventh and eighth statements because they were also provably true or false. Therefore, we further conclude that the court did not err in allowing the jury to consider these statements of fact in deciding Dr. Goldberg's defamation claim.[5]

### B. Last Three Statements and Jury Instructions 7 and 8

After ruling on the demurrer that the last three statements were statements of opinion incapable of supporting a defamation action as a matter of law, the trial court gave finding instructions in jury instructions 7 and 8 that allowed the jury to consider the last three statements along with the first eight statements in deciding Dr. Goldberg's defamation claim. The jury was thus permitted to find the last three statements to be defamatory; and in the absence here of a special verdict, there is no way to determine whether the jury based any or all of its defamation verdict on one or more of these last three statements. We therefore agree with Handberg that it was reversible error for the trial court to have so instructed the jury.

---

[4] Because neither Dr. Goldberg nor the Morgan Center appealed the trial court's ruling on Handberg's demurrer that the last three statements (numbered 9 through 11, *supra*) at issue were statements of opinion and thus nonactionable, we do not conduct a de novo review of whether they are actionable statements of fact or mere opinion. We simply treat them as statements of opinion, as the trial court ruled, for purposes of this appeal.

[5] Handberg does not argue on appeal that the second, fifth, sixth, seventh and eighth statements lacked defamatory "sting" and therefore any such argument is waived. *See* Rule 5:17.

Having allowed the jury to consider the last three nonactionable opinion statements, the trial court violated its "essential gatekeeping function" of ensuring that a defamation action only proceed "upon statements which actually may defame a plaintiff." *Webb*, 287 Va. at 90.

In support of jury instructions 7 and 8, Dr. Goldberg relies on *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 297 (1987), where this Court rejected the defendant newspaper reporter's argument in a defamation action that the trial court "should have winnowed out obviously non-defamatory material in its instructions to the jury." In doing so, the Court stated that "[t]here is no duty upon a trial court to segregate potentially defamatory from non-defamatory material in granting instructions to the jury," given that "[i]t was the jury's function to determine which statements were defamatory statements of fact about [the plaintiff]." *Id*. at 297-98.

That holding was an aberration from what we had stated just two years earlier in *Chaves* and what we have consistently adhered to as the law governing defamation actions after *Richmond Newspapers, Inc.* Affirming the ruling of the trial court in setting aside a jury verdict awarding damages for defamation based on a letter that was not defamatory, we explained in *Chaves* that "[i]t is for the court, not the jury, to determine as a matter of law whether an allegedly libelous statement is one of fact or one of opinion." 230 Va. at 119 (citing *Slawik v. News-Journal,* 428 A.2d 15 (Del.1981); *Catalano v. Pechous,* 387 N.E.2d 714 (Ill. App. 1978); *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 366 N.E.2d 1299 (N.Y. App. 1977)). After *Richmond Newspapers, Inc.*, we reiterated in *WJLA-TV* that "[w]hether an alleged defamatory statement is one of fact or of opinion is a question of law to be resolved by the trial court," 264 Va. at 156-57 (citing *Chaves*, 230 Va. at 119), and that has remained the legal standard in our case law, which

we have repeatedly described as the trial court's "gatekeeping function" in a defamation action. *Pendleton*, 290 Va. at 172; *Schaecher*, 290 Va. at 94; *Webb*, 287 Va. at 90.

Trial courts will have to decide on a case-by-case basis whether an unredacted document containing both actionable statements of fact and statements of mere opinion should be presented to the jury for purposes of providing context for the actionable statements of fact, as was done with the email in the present case; or whether only the actionable statements of fact should be presented for the jury's consideration. *See, e.g.*, *Raytheon Tech. Servs. Co.*, 273 Va. 292 at 304-06 (holding that three of five statements at issue on a defamation claim, which were statements of mere opinion in an employee performance evaluation, should not have been submitted to the jury). Either way, the trial court must specifically instruct the jury as to the actionable factual statements that the jury can consider in determining whether the defendant defamed the plaintiff—as opposed to statements of mere opinion which cannot be a basis for a defamation claim.

### C. Evidentiary Sufficiency of Jury's Defamation Verdict

In challenging the sufficiency of the evidence to support the jury verdict for Dr. Goldberg on her defamation claim, Handberg relies on the jury's verdict in his favor on his counterclaim for conversion against the Morgan Center. Handberg argues the trial court erred in denying his motion to set aside the jury's defamation verdict in favor of Dr. Goldberg because the jury's conversion verdict in Handberg's favor against the Morgan Center negated the jury's defamation verdict—which Handberg characterizes as a "classic conflicted verdict." Appellant's Br. at 36. The conversion verdict, Handberg asserts, established that Dr. Goldberg and the Morgan Center took money out of his checking account without his authorization, which was "the basis for all of his opinions concerning the conduct of [Dr.] Goldberg" stated in the email at issue. *Id*.

12

Moreover, Handberg contends that the finding against the Morgan Center for conversion means that his statements accusing Dr. Goldberg of billing fraud were true. We disagree.

Handberg's evidentiary sufficiency challenge to the defamation verdict is fundamentally flawed for multiple reasons. First, as addressed above, eight of Handberg's statements in the email concerning Dr. Goldberg were actionable statements of fact, not mere opinion. Second, the elements of conversion do not include a finding of fraud, as explained in *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994): "In *Universal CIT Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359 (1956), this court reiterated the elements of conversion, explaining that the tort encompasses 'any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possessions; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." Finally, a finding against the Morgan Center for conversion was not a finding of fraud by Dr. Goldberg, and indeed the jury expressly found in favor of Dr. Goldberg on the fraud count. Accordingly, Handberg's conversion verdict against the Morgan Center cannot reasonably be interpreted to mean the jury found that the allegations of billing fraud against Dr. Goldberg were true.

III.  CONCLUSION

Because the trial court erred in submitting to the jury the last three statements in Handberg's trial, which were mere statements of opinion, we reverse the judgment of the trial court in upholding the defamation verdict in favor of Dr. Goldberg and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded*.

13