# CIRCUIT COURT OF FAIRFAX COUNTY

Cynthia Hyland

    v.

Raytheon Technical
Services Co.
and Bryan Even

November 6, 2007

Case No. CL-221038

BY JUDGE ARTHUR B. VIEREGG

Cynthia Hyland filed the instant action against her former employer, Raytheon Technical Services Company ("RTSC") and its president, Bryan Even, following her termination in 2003. The original trial eventuated in a judgment in favor of Ms. Hyland against RTSC and Mr. Even. On appeal, the Supreme Court of Virginia reversed and remanded. On October 19, 2007, the case came before this Court on Defendants' Motion for Summary Judgment. After submission of briefs and oral argument on October 19, 2007, I took the matter under advisement. My decision follows.

*Material Proceedings*

After RTSC terminated her employment, Ms. Hyland filed two lawsuits: (1) the instant action in which she sought damages predicated on various Virginia statutory and common law theories of recovery, including common law defamation; and (2) a federal cause of action in the United States District Court of the Eastern District of Virginia alleging that RTSC's conduct violated Title VII (gender discrimination) and the Sarbanes-Oxley Act of 2002.

### 1. *Fairfax Defamation Action*

Ms. Hyland's action in this Court sought damages for defamation, fraud, fraud in the inducement, and tortuous interference with a business expectancy. Trial commenced on October 17, 2005. After a seven-day trial, the jury returned a verdict in favor of Ms. Hyland with regard to her causes of action for defamation, fraud, and tortuous interference with a business expectancy. The jury awarded her $1.5 million in compensatory damages and $2 million in punitive damages. After the trial, Defendants filed a renewed Motion to Strike and a Motion to Set Aside Verdict. This Court set aside the jury verdict with respect to the fraud and tortuous interference claims. However, Defendants' Renewed Motion to Strike was denied with respect to the defamation claims against RTSC and Mr. Even. On December 20, 2005, an Amended Final Order was entered awarding Ms. Hyland compensatory damages in the amount of $1.5 million and punitive damages in the amount of $350,000, the statutory limit.

RTSC and Mr. Even appealed. In *Raytheon Tech. Servs. Co. v. Hyland*, 273 Va. 292, 641 S.E.2d 84 (2007), the Supreme Court of Virginia reversed this Court's judgment, ruling that only two of the five statements Ms. Hyland alleged to be defamatory were statements of fact and therefore potentially actionable as defamatory. The two potentially actionable statements were:

> (1) Cynthia lead [sic] RTSC in the protest of the FAA's evaluation selection process for the [TSS] contract and through a difficult procurement for the TSA, both of which demanded her constant attention. These visible losses created significant gaps in our strategic plans and in her business unit financial performance.
>
> (2) Cynthia and her team met their cash goals, but were significantly off plan on all other financial targets including Bookings by 25%, Sales by 11.5%, and profit by 24%.

As to the first of these statements, the Supreme Court identified two factual and therefore potentially false and defamatory components: (1) "[w]hether Hyland led the protest" of the TSS contract award and the TSA procurement and was responsible for "these visible losses" and (2) whether "losses from those projects created gaps in the company's plans and the financial performance of business units which [Ms. Hyland] oversaw." *RTSC v. Hyland*, 273 Va. 292, 304-05 (2007).

The sole factual component the Court identified in the second allegedly defamatory statement was "[w]hether the business unit missed its goals by the stated percentages." *Id.* at 304.

Because three of the five statements submitted to the jury constituted opinions and therefore could not form the basis of a defamation action, the Supreme Court set aside the jury's verdict and remanded the case for a new trial as to the two potentially defamatory statements.

## 2. *The U.S. District Court Action*

Ms. Hyland's federal suit alleged that RTSC's conduct violated Title VII (gender discrimination) and the Sarbanes-Oxley Act of 2002. Ms. Hyland sought (1) reinstatement of her former position, (2) compensatory and punitive damages, (3) attorneys' fees, and (4) injunctive relief. Ms. Hyland did not name Mr. Even as a defendant in the federal suit.

On October 18, 2005, the District Court granted summary judgment in favor of RTSC and against Ms. Hyland. She appealed. On January 13, 2006, Ms. Hyland discontinued her appeal of the District Court's adverse summary judgment decision.

In granting summary judgment, the Honorable Claude M. Hilton made factual findings demonstrating that certain statements Mr. Even included in Ms. Hyland's performance evaluation were true and therefore not defamatory. RTSC and Even maintain that, since these findings were made by Judge Hilton in a lawsuit involving both of the parties here, or their privies, the truth of Mr. Even's statements made in Ms. Hyland's evaluation is a matter decided between the parties.

## Statement of Facts

Beginning in January 2000, Cynthia Hyland served as the Senior Vice President and General Manager of the Installation and Integration Services ("IIS") division at Raytheon Technical Services Company ("RTSC"). Ms. Hyland's immediate supervisor was Bryan Even, President of RTSC.

IIS's primary revenue source was the Federal Aviation Administration's Technical Support Services contract ("TSS contract"). In 2001, the FAA solicited proposals for companies to perform later stages of the TSS contract. In December 2001, the FAA awarded the contract to one of RTSC's competitors. Under Ms. Hyland's direction, RTSC protested the FAA's evaluation selection process. After considering RTSC's protest, the FAA

sustained its initial decision. Due to the loss of the TSS contract, several hundred RTSC employees lost their jobs and US closed six of its eleven regional offices.

In February 2002, Ms. Hyland was the Proposal Manager responsible for RTSC's bid to obtain the Explosive Detection Systems contract from the Federal Transportation Security Administration ("TSA contract"). In May 2002, TSA awarded the contract to another company.

The next month, Mr. Even reorganized RTSC and named Ms. Hyland Senior Vice President and General Manager of System and Product Support Services (SPSS), a new business division comprised of IIS, Integrated Logistic Services, and Commercial Services. Ms. Hyland had not previously managed either the Integrated Logistic Services division or the Commercial Services division.

In early 2003, Mr. Even drafted Ms. Hyland's 2002 performance and development summary. In that report, Mr. Even included both allegedly defamatory statements at issue on remand. Mr. Even presented the evaluation at the company's annual internal review of senior leadership. After the meeting, RTSC terminated Ms. Hyland's employment.

*Standard of Review*

Summary judgment is appropriate "only in cases in which no material facts are genuinely in dispute." *Klaiber v. Freemason Assocs.*, 266 Va. 478, 484, 587 S.E.2d 555 (2003). "The decision to grant a motion for summary judgment is a drastic remedy." *Id.* Pursuant to Rule 3:20 of the Supreme Court of Virginia, a trial court's consideration of the merits of a motion for summary judgment "is limited to the pleadings, the orders . . . [and] the admissions, if any, in the proceedings."

*Analysis*

The sole issue on remand is whether the two statements Mr. Even wrote in Ms. Hyland's 2002 performance evaluation were defamatory. Under Virginia law, truth is an absolute defense to an action for defamation. *Alexandria Gazette Corp. v. West*, 198 Va. 154, 159, 93 S.E.2d 274 (1956). Defendants' only grounds for seeking summary judgment is that the two allegedly defamatory statements in Ms. Hyland's 2002 performance evaluation are true. The question dispositive of Defendants' motion is therefore whether a genuine dispute of material fact exists with respect to the veracity of the alleged defamatory statements.

## 1. *Collateral Estoppel*

Defendants first argue Ms. Hyland is collaterally estopped from seeking relief on the basis of the first allegedly defamatory statement because the U.S. District Court's findings establish the statement is true as a matter of law. Although Mr. Even was not named as a defendant in Ms. Hyland's federal suit, Ms. Bredehoft conceded at the hearing that as a privy of RTSC, he is entitled to assert the collateral estoppel defense. Ms. Hyland contends that because Defendants failed to assert their collateral estoppel defense at or before the initial trial, the law of the case doctrine precludes them from raising the defense on remand.

Pursuant to the law of the case doctrine, a party cannot re-litigate unappealed issues on remand. *Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc.*, 259 Va. 92, 108 (2000). The rule also applies where the unappealed issue was "necessarily involved in the first appeal, whether actually adjudicated or not." *Searles' Adm'r v. Gordon's Adm'r*, 156 Va. 289, 295, 157 S.E. 759 (1931). Accordingly, an affirmative defense not asserted during the pendency of the initial trial may not be raised on remand. *Norfolk & W. Ry. v. Duke*, 107 Va. 764, 60 S.E. 96 (1908).

RTSC and Mr. Even pleaded collateral estoppel as an affirmative defense but failed to assert the defense at trial. Accordingly, they can only raise their collateral estoppel defense at this stage of the proceedings if it was not "necessarily involved" in the original trial.

It is plain that only those issues that are ripe for adjudication are "necessarily involved" in a case. Defendants argue that, because the U.S. District Court's decision did not become a final order for collateral estoppel purposes until Ms. Hyland discontinued her appeal on January 13, 2006, their collateral estoppel defense did not become ripe until after this court lost jurisdiction over the case. *See Faison v. Hudson*, 243 Va. 413, 417 S.E.2d 302 (1992) ("[A] judgment is not final for purposes *res judicata* or collateral estoppel when it is being appealed or when the time limits fixed for perfecting the appeal have not expired.").

Defendants' reliance on *Faison* is misplaced. In *Faison*, the decision underlying the defendant's collateral estoppel defense was rendered by a Virginia court. As such, Virginia law determined the preclusive effect of that Virginia court's decision. Here, Defendants seek to give preclusive effect to a judgment from a U.S. District Court. Both Virginia Code § 8.01-389(B) and the Full Faith and Credit Clause of the United States Constitution require Virginia courts to give judgments from other jurisdictions within the United States "at least the same preclusive effect [they] would have been accorded in

the rendering state." *Osborne v. Osborne*, 215 Va. 205, 207 S.E.2d 875 (1974); *see also Glasco v. Ballard*, 249 Va. 61, 64, 452 S.E.2d 854 (1995) (holding that a "prior federal court judgment is accorded the preclusive effect in subsequent state litigation that the federal courts would have attached thereto"). Hence, this Court must give the U.S. District court's judgment the same preclusive effect the Fourth Circuit would give it.

While a federal district court decision awarding summary judgment to a litigant may constitute a final decision for collateral estoppel purposes, *Glasco*, 249 Va. at 64, the Fourth Circuit has not explicitly addressed the issue of whether such a decision retains its preclusive effect when it is being appealed. *Phamacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (1999).

Most federal Circuit Courts have held that "the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding. *SSM Equipment, S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365 (Fed. Cir. 1983); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4433 (2d ed., 2002) (citing case law from the Supreme Court, and from the Second, Fifth, Sixth, Seventh, Ninth, Eleventh, District of Columbia and Federal Circuits for the proposition that a final judgment retains its preclusive effect even while an appeal is pending). In addition, the Fourth Circuit has upheld two district court decisions applying the majority rule. *See Chaudhary v. Stevens*, 182 Fed. Appx. 204 (4th Cir. 2006) (finding no reversible error in the district court's application of the majority rule); *Chaudhary v. Stevens*, 2005 U.S. Dist. LEXIS 27447 (2005); *Warwick Corp. v. Maryland Dep't of Transp.*, 735 F.2d 1359 (4th Cir. 1984); *Warwick Corp. v. Maryland Dep't of Transp.*, 573 F. Supp. 1011 (1983).

In light of the Fourth Circuit's decisions in *Chaudhary* and *Warwick*, I conclude that, if squarely faced with the issue, the Fourth Circuit would likely adopt the majority rule and would afford preclusive collateral estoppel effect to its judgments even while they are on appeal. Therefore, despite Ms. Hyland's appeal, I conclude that the Eastern District of Virginia's judgment became final for collateral estoppel purposes when it was decided on October 18, 2005.

Defendants' collateral estoppel defense was ripe for adjudication almost four months before this Court lost jurisdiction over the case on January 10, 2006. Defendants were obligated to assert their collateral estoppel defense during the pendency of the original trial. They failed to do so. Accordingly, pursuant to the law of the case doctrine, they are precluded from raising it on remand.

## 2. *Ms. Hyland's Admissions*

In the alternative, Defendants' argue summary judgment is appropriate because Ms. Hyland's admissions establish the truth of both allegedly defamatory statements. Ms. Hyland contends that, because Defendants failed to challenge the sufficiency of the evidence supporting the jury's finding that the statements were actionable, the law of the case doctrine precludes them from raising this defense as well.

Ms. Hyland's argument on this issue is unpersuasive. The law of the case doctrine only precludes the re-litigation of those issues "necessarily decided" at the original trial. *Powell v. Commonwealth*, 267 Va. 107, 131, 590 S.E.2d 537 (2004); *see also Wheeler v. Wheeler*, 1998 Va. App. LEXIS 165 (1998). In this case, the jury's verdict did not specify which of the five allegedly defamatory statements it found to be defamatory. Therefore, because the jury did not necessarily decide the two allegedly defamatory statements at issue on remand were false, the merits of Defendants argument that Ms. Hyland's admissions establish the truth of the allegedly defamatory statements must be addressed.

The first factual component the Supreme Court identified in the first allegedly defamatory statement is "[w]hether Hyland led the protest of the TSS contract award and the TSA procurement and was responsible[1] for 'these visible losses'." *Raytheon Technical Services Co. v. Hyland*, 273 Va. 292, 304-05 (2007). Ms. Hyland admits she "oversaw the efforts of the proposal team's support to the [TSS] protest." (RFA 22; *see also* RFA 13, 50.) She also admits she was the "Proposal Manager" in charge of acquiring the TSA contract. (RFA 31; *see also* RFA 37, 56.) Ms. Hyland's admissions confirm she led RTSC's attempts to acquire the TSS and TSA contracts. As the senior executive on both projects, she is ultimately responsible for the company's failure to acquire the contracts. Thus, the first factual component of the first allegedly defamatory statement is true.

The second factual connotation of the first defamatory statement is whether "losses from those projects created gaps in the company's plans and

---

[1] *Webster's Dictionary* defines "responsible" to mean "(1) accountable, as for something within one's power . . . [or] (3) chargeable with being the source or occasion of something." *Random House Webster's College Dictionary* (1997). I conclude the Supreme Court intended the former definition to be applied. Were the latter definition applied, the statement would plainly constitute an opinion.

the financial performance of business units which she oversaw." Ms. Hyland concedes "the loss of the TSSC III created a financial shortfall, and that the [TSA] contract would have reduced the financial challenge." (RFA 163.) She also admits "the loss of the [TSS contract] left a gap in sales revenue." (RFA 27.) In her brief, Ms. Hyland asserts she disputed at trial that the loss of the TSA contract created a significant gap in financial plans. In support of her argument, she cites testimony disputing the significance of the loss of the TSA contract. The Supreme Court, however, specifically stated that "the adjective 'significant' may be a matter of opinion, but the operative part of the statement involves Hyland's responsibility for the losses, not their size." 273 Va. at 304-05. Accordingly, because the testimony cited by Ms. Hyland only contests Mr. Even's opinion as to the importance of the loss of the TSA contract, it does not create a genuine dispute as to the veracity of the statement. The second factual component of the first alleged defamatory statement is true.

Finally, the factual component of the second allegedly defamatory statement is "[w]hether the business unit missed its goals by the stated percentages." *Id.* at 304. Ms. Hyland has never contested that, in 2002, SPSS fell short of the projections set forth in the company's annual operating plans to the extent Mr. Even indicated. Ms. Hyland's sole argument with respect to this issue is that the statement gives the false impression she was responsible for all of the losses SPSS incurred when, in fact, she only managed SPSS for the last six months of 2002. Ms. Hyland's argument, however, is inapposite to the issue framed by the Supreme Court of Virginia. The factual component of the statement is not whether Ms. Hyland was to blame for all of the division's losses for 2002. Rather, the factual component was whether the division, in fact, incurred losses to the extent Mr. Even indicated. During oral argument before the Supreme Court, Counsel for Ms. Hyland conceded Mr. Even accurately characterized the extent of SPSS's losses for the year 2002. *See* Transcript of Oral Argument at 26, *Raytheon Technical Serv's. Co. v. Hyland*, 273 Va. 292, 641 S.E.2d 84 (2007). The second allegedly defamatory statement is true.

In sum, no genuine dispute of fact exists as to the veracity of either allegedly defamatory statement. Both statements are true as a matter of law. Therefore, neither statement is defamatory.

Defendants' Motion for Summary Judgment is granted.