PRESENT: All the Justices

JEFFREY W. THARPE, ET AL.

OPINION BY
v. Record No. 120985        JUSTICE ELIZABETH A. MCCLANAHAN
FEBRUARY 28, 2013
J. HARMAN SAUNDERS, ET AL.

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Theodore J. Markow, Judge

In this defamation case, Jeffrey W. Tharpe ("Tharpe") and

Shearin Construction, Inc. ("Shearin"), appeal from the judgment

of the circuit court sustaining the demurrer filed by J. Harman

Saunders ("Saunders") and J. Harman Saunders Construction, Inc.

("Saunders Construction"). Because we find the circuit court

erred in ruling that the alleged defamatory statement

constituted an expression of opinion, we will reverse the

circuit court's judgment.

I. BACKGROUND

Since this case was decided below on demurrer, we accept as

true the well-pleaded facts sets forth in the amended complaint

and all inferences fairly drawn therefrom. Hawthorn v. City of

Richmond, 253 Va. 283, 284-85, 484 S.E.2d 603, 604 (1997); Russo

v. White, 241 Va. 23, 24, 400 S.E.2d 160, 161 (1991).

Shearin, acting through its agent, Tharpe, contracted with

the United States government to perform excavation work at Fort

Pickett. During the excavation, Shearin encountered rock and

entered into a change order for compensation above the amount of

the original contract price upon the basis that encountering the rock was a changed condition.  Subsequently, Shearin, also acting through Tharpe, contracted with the Southside Regional Service Authority (the Authority) to perform excavation work at Butcher's Creek Landfill in Mecklenburg County.  A dispute arose between Shearin and the Authority after Shearin encountered rock during the excavation and requested a change order for compensation above the original contract price.

Saunders, owner and operator of Saunders Construction, a business competitor of Shearin, allegedly made the following statement to Wayne Carter, the Mecklenburg County Administrator and the Authority's Executive Director: "Tharpe told me that Tharpe was going to screw the Authority like he did Fort Pickett."  This statement was allegedly made again by Saunders to Carter and another named individual, then repeated and republished by and to the Authority, people of the community, and the news media.  Tharpe and Shearin assert that Tharpe never told Saunders "[he] was going to screw the Authority like he did Fort Pickett" and, therefore, such statement is false.  They further assert that Saunders made the statement knowing it to be false, or in reckless disregard of whether it was false, because of personal spite, hatred, ill will, or a desire to hurt the business reputation of Tharpe and Shearin.

2

Tharpe and Shearin contend that the "clear meaning" of the statement as understood by the Authority, the community, and the general public "was that Tharpe, acting as agent for Shearin, intended to screw[1] the Authority by making a[n] unjustified change order request as a result of encountering rock on the Authority Project" and "that Tharpe, acting as agent for Shearin, previously screwed the United States, who contracted for the Fort Pickett Project, by making an unjustified change order request as a result of encountering rock on the Fort Pickett Project."  Thus, Tharpe and Shearin contend that the words in the statement "in their normal usage" were understood by the Authority, the community, and the general public "to harm Tharpe's and Shearin's business reputation."

It is further alleged that as a "direct and proximate cause" of the statement, the Authority filed suit alleging fraud against Tharpe and Shearin causing them to incur "significant

_____

[1] Tharpe and Shearin contend that the "the word 'screw' as used in the [s]tatement . . . means to unfairly take advantage of another or to act dishonestly in the transaction of business" and that "the word 'screw' was so understood by the Authority, people of the community, and the general public."  Cf. Webster's Third New International Dictionary 2041 (1993)("to oppress or dispossess by unreasonable or extortionate actions or conditions" or "to extract by pressure of threat"); Oxford English Dictionary (2d ed. 1989, rev. online ed. Dec. 2012), http://www.oed.com/view/entry/173460 (last visited Feb. 6, 2013)("[t]o defraud (a person, esp[ecially] of money), to cheat; to deceive").

attorneys' fees."  Additionally, Shearin has not been invited to "submit bids on several large construction projects," "the business reputations of Tharpe and Shearin have been severely and permanently damaged," and Tharpe and Shearin "have been and will continue to be financially harmed."

In this present defamation suit filed by Tharpe and Shearin, Saunders and Saunders Construction demurred to the amended complaint on the ground that the statement allegedly made by Saunders did not contain a provably false statement, but was an expression of opinion.[2]  The circuit court agreed, explaining that "[w]hether the quoted statement was made or not is certainly factual subject to being disproved," but "the basis for the claim of defamation is not dependent upon that fact." The circuit court reasoned that the claim of defamation is dependent on the ability to prove that Tharpe was going to "screw" the Authority and that Tharpe had "screwed" Fort Pickett.  According to the circuit court, because what is meant by the word "screw" is dependent upon the speaker's viewpoint, the alleged defamatory statement was an expression of opinion.

---

[2] Although the demurrer contained several alternative grounds for dismissal, the only issue addressed by the circuit court, which it found dispositive, was whether the alleged defamatory statement was an expression of opinion. Accordingly, this is the only issue before us on appeal.

II. ANALYSIS

On appeal, Tharpe and Shearin argue that the circuit court erred in holding that the alleged defamatory statement by Saunders that "Tharpe told me that Tharpe was going to screw the Authority like he did Fort Pickett" was an expression of opinion.

The elements of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005). "To be actionable, the statement must be both false and defamatory." Id. "Causes of action for defamation have their basis in state common law but are subject to principles of freedom of speech arising under the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia." Yeagle v. Collegiate Times, 255 Va. 293, 295, 497 S.E.2d 136, 137 (1998).

> The First Amendment to the Federal Constitution and article 1, section 12 of the Constitution of Virginia protect the right of the people to teach, preach, write, or speak any such opinion, however ill-founded, without inhibition by actions for libel and slander. "[E]rror of opinion may be tolerated where reason is left free to combat it." Thomas Jefferson's First Inaugural Address (1801). "However pernicious an opinion may see[m], we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974).

Chaves v. Johnson, 230 Va. 112, 119, 335 S.E.2d 97, 102 (1985). "But there is no constitutional value in false statements of fact." Gertz, 418 U.S. at 340.

Accordingly, "pure expressions of opinion" are constitutionally protected and "cannot form the basis of a defamation action." Williams v. Garraghty, 249 Va. 224, 233, 455 S.E.2d 209, 215 (1995). "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 132, 575 S.E.2d 858, 861 (2003). Furthermore, "[s]peech that does not contain a provably false factual connotation" is generally considered " 'pure expression[] of opinion.' " WJLA-TV v. Levin, 264 Va. 140, 156, 564 S.E.2d 383, 392 (2002).[3]

"Whether an alleged defamatory statement is one of fact or of opinion is a question of law to be resolved by the trial court." Id. at 156-57, 564 S.E.2d at 392; Tronfeld v.

---

[3] "While pure expressions of opinion are not actionable, '[f]actual statements made to support or justify an opinion . . . can form the basis of an action for defamation.' " Raytheon Tech. Servs. Co. v. Hyland, 273 Va. 292, 303, 641 S.E.2d 84, 90 (2007) (quoting Williams, 249 Va. at 233, 455 S.E.2d at 215). Because "expressions of 'opinion' may often imply an assertion of objective fact," the United States Supreme Court has refused to "create a wholesale defamation exemption for anything that might be labeled 'opinion.' " Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990); see also Raytheon, 273 Va. at 303, 641 S.E.2d at 91.

6

Nationwide Mut. Ins. Co., 272 Va. 709, 714, 636 S.E.2d 447, 450 (2006); Fuste, 265 Va. at 132-33, 575 S.E.2d at 861.  Because this determination is an issue of law, we conduct a de novo review of the statement in question.  Raytheon, 273 Va. at 304, 641 S.E.2d at 91.  In conducting our review, we do not determine whether the alleged defamatory statement is true or false, but whether it is capable of being proved true or false.  Id.

Applying these principles, Saunders' statement that "Tharpe told me that Tharpe was going to screw the Authority like he did Fort Pickett" is indisputably capable of being proven true or false.  The statement can be disproved by evidence, if adduced, that Tharpe did not tell Saunders he "was going to screw the Authority like he did Fort Pickett."  It is neither an expression of Saunders' opinion that Tharpe made this statement to Saunders, nor is it dependent on Saunders' viewpoint.  See, e.g., Tronfeld, 272 Va. at 715-16, 636 S.E.2d at 451.[4]  For that reason, the constitutional right to speak opinion "without inhibition by actions for libel and slander" is not implicated

---

[4] To illustrate this point further, if it were alleged instead that Saunders said "Tharpe is going to screw the Authority like he did Fort Pickett," one might argue that such a statement by Saunders is an expression of Saunders' opinion or dependent on his viewpoint.  In contrast, the allegation in this case is that Saunders made a false statement of fact – that Tharpe said he was going to "screw" the Authority like he did Fort Pickett.

since it is Saunders' alleged false statement of fact, not any expression of his opinion, that subjects him to potential liability.  Chaves, 230 Va. at 119, 335 S.E.2d at 102.

Although the circuit court recognized that "[w]hether the quoted statement was made or not is certainly factual subject to being disproved," it nevertheless required that the statement attributed to Tharpe by Saunders also contain a provably false connotation.  However, Tharpe's and Shearin's claims of defamation are based solely on the false attribution to Tharpe of the quoted statement, which he denies having spoken, not the falsity of the assertion contained within that alleged statement.

> [R]egardless of the truth or falsity of the factual matters asserted within the quoted statement, [a false] attribution may result in injury to reputation because the manner of expression or even the fact that the statement was made indicates a negative personal trait or an attitude the speaker does not hold.

Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 511 (1991) (emphasis added).[5]  The gravamen of the amended complaint is that

---

[5] In fact, "[a] self-condemnatory quotation may carry more force than criticism by another."  Masson, 501 U.S. at 512.  As the Supreme Court noted,

> [i]t is against self-interest to admit one's own criminal liability, arrogance, or lack of integrity, and so all the more easy to credit when it happens.  This principle underlies the elemental rule of evidence which permits the introduction of

8

Saunders allegedly attributed a fabricated quotation to Tharpe that, as a quotation, caused injury to the reputations of Tharpe and Shearin.  Such allegations give rise to a claim of defamation regardless of the truth or falsity of the matters asserted in the statement allegedly attributed to Tharpe or whether such assertions are fact or opinion.  Id. at 511-12 (where a public-figure psychoanalyst was falsely quoted as stating he was "the greatest analyst who ever lived," the Court explained that "one need not determine whether [he] is or is not the greatest analyst who ever lived in order to determine that it might have injured his reputation to be reported as having so proclaimed").

Although we have not previously addressed fabricated quotations, other jurisdictions have recognized that quotations falsely attributed to a plaintiff are actionable as defamation regardless of the truth or falsity of the substance of the quotation when it injures the plaintiff's reputation.  See, e.g., Levesque v. Doocy, 560 F.3d 82, 89-90 (1st Cir. 2009) (false attribution of comments to plaintiff encouraged listeners

---

> statements against interest, despite their hearsay character, because we assume "that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true."

Id. at 512 (quoting Advisory Committee's Notes on Fed. Rule Evid. 804(b)(3), 28 U.S.C. App., p. 789).

to form negative conclusions about plaintiff tending to harm his reputation); Kerby v. Hal Roach Studios, Inc., 127 P.2d 577, 581 (Cal. Dist. Ct. App. 1942) (defamation may be accomplished by falsely putting words into the mouth of the person defamed and imputing to such person a willingness to use them "where the mere fact of having uttered or used the words" would produce harm to plaintiff's reputation); Selleck v. Globe Int'l, Inc., 212 Cal. Rptr. 838, 845 (Cal. Ct. App. 1985) (article containing both direct and indirect quotations of statements made by plaintiff imputing a betrayal of his son "[did] not merely express defendant's opinion that plaintiff made statements about his son" but "assert[ed] as a fact that plaintiff made the statements"); Schmalenberg v. Tacoma News, Inc., 943 P.2d 350, 357 (Wash. Ct. App. 1997) (a statement may be provably false because it is falsely attributed to a person who did not make it even if the matter asserted in the statement is true).[6]

---

[6] In Schmalenberg, the court recognized at least three ways in which a statement may be provably false: because it falsely represents the state of mind of the person making it, because it is falsely attributed to a person who did not make it, or because the assertion made within the statement is false.

> Thus, if Doe says, "I think Smith said that Jones lied about the accident," the statement may be false (a) because Doe does not really think that Smith said Jones lied about the accident; (b) because Smith did not say that Jones lied about the accident, even though Jones did; or (c) because

10

Similarly, Tharpe's and Shearin's claims are not dependent on the ability to prove that Tharpe was going to "screw" the Authority and that Tharpe had "screwed" Fort Pickett.  It is irrelevant to their claims whether these assertions are capable of being proven false.  Rather, Saunders' statement of fact – "Tharpe told me that Tharpe was going to screw the Authority like he did Fort Pickett" – if believed by the hearer as coming from Tharpe, by its very nature is alleged to have defamed Tharpe and Shearin.  Therefore, regardless of the truth or falsity of the matters asserted in the quote attributed to Tharpe, Saunders' statement is an actionable statement of fact.

### III. CONCLUSION

In sum, we hold the circuit court erred in ruling the alleged defamatory statement was an expression of opinion and in sustaining the demurrer on that ground.  Accordingly, we will reverse the circuit court's judgment and remand for further proceedings.

Reversed and remanded.

---

Jones did not lie about the way in which the
accident happened.

Schmalenberg, 943 P.2d at 357.